UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
UNITED STATES OF AMERICA, : CASE NO. 1:09-CR-353
:
Plaintiff, :
:
vs. : ORDER & OPINION
: [Resolving Doc. No. 16.]
LAMAR W. COOPER, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Lamar W. Cooper moves the Court to suppress evidence found and statements made during an allegedly illegal search and seizure of the Defendant. [Doc. 16.] The United States of America opposes the motion. [Doc. 24.] The Court held a suppression hearing on October 8, 2009. [Doc. 25.] For the reasons that follow, the Court **GRANTS** the Defendant's motion to suppress.

I. Background

In this case, the United States charges the Defendant as being a felon unlawfully in possession of a firearm, in violation of 18 U.S.C. 922(g). [Doc. 1.] The United States says Cooper unlawfully possessed firearms on July 13, 2009.

On July 13, 2009, at approximately 2:40 p.m., two Cleveland Police Officers, Officer Robert Sauterer and Officer Robert Taylor, observed a silver Toyota parked at 15317 Ridpath Avenue in Cleveland, Ohio. [Doc. 16 at 2; Doc. 24 at 2.] The officers observed three occupants in the car. [Doc. 24 at 2; Doc. 28 at 10, 33.] The officers believed the Ridpath area to be a high-crime area. [Doc. 28 at 8-9, 33.] The officers ran the license plate on the vehicle, and the registration suggested

Case No. 1:09-CR-353
Gwin, J.

the license plate was registered to a red Toyota. [*Id.* at 10-11, 33-34.]  The registration was wrong. Likely because of an entry error by Bureau of Motor Vehicles employees, the registration failed to accurately reflect the vehicle's correct color, silver.  [*Id.* at 21.] Other than the color, the computer search of the license plate revealed no other discrepancies between the registered vehicle and vehicle that the officers observed.  [*Id.* at 24, 42-43.]

      The officers pulled their cruiser behind the Toyota with their overhead lights on, but did not activate the car's siren.  [*Id.* at 16, 35.]  Officer Sauterer approached the driver's side of the vehicle and Officer Taylor approached the passengers' side of the vehicle. [Doc. 16 at 2; Doc. 24 at 2.] Officer Sauterer began to question the driver to determine if the vehicle was properly registered. [Doc. 28 at 17, 19.]  Officer Taylor approached the Defendant, who was seated in the right rear seat. [*Id.* at 18, 35.]  Officer Taylor testified that the Defendant was acting very nervous and agitated. [*Id.* at 35-36.]  Officer Taylor asked the Defendant to show him his hands, and the Defendant complied.[1/] [Doc. 16 at 2; Doc. 24 at 2.] Officer Taylor then asked the Defendant if he "had anything on him?" Defendant Cooper replied that he had "some weed." [Doc. 16 at 3; Doc. 24 at 2; Doc. 28 at 37.] Officer Taylor then had Cooper exit the vehicle and recovered the marijuana from Cooper's pants pocket. [Doc. 16 at 3; Doc. 24 at 2; Doc. 28 at 37.]

      Officer Taylor then attempted to pat down the Defendant for weapons. [Doc. 24 at 2; Doc. 28 at 38.] When the Defendant leaned his body closer to the vehicle, Officer Taylor grabbed the Defendant by his waistband and asked him if he had anything.  [Doc. 16 at 3; Doc. 24 at 2-3; Doc. 28 at 38-39.] The Defendant responded that he had a gun. [Doc. 16 at 3; Doc. 24 at 3; Doc. 28 at 39.]

---

      [1/]During the suppression hearing, Officer Taylor first stated he only remembered asking the Defendant one question while he was still in the car–"Do you have anything on you?" [Doc. 28 at 37, 46.] On cross-examination, however, Officer Taylor admitted that he also told the Defendant to keep his hands out of his pocket. [*Id.* at 47.]

Case No. 1:09-CR-353
Gwin, J.

Officer Taylor then immediately handcuffed the Defendant and turned him around to recover the weapon. [Doc. 24 at 3; Doc. 28 at 39.] At that time, the weapon fell to the ground. [Doc. 24 at 3; Doc. 28 at 39.] The officers subsequently arrested the defendant and transported him to the police station for booking.[2/] [Doc. 28 at 41.]

A federal grand jury indicted the Defendant on one count of being a felon in possession of a firearm in violation of 18 U.S.C. 922(g). [Doc. 1.] The Defendant now moves the Court to suppress the evidence recovered and statements made during the officers' stop and seizure of the vehicle. Defendant Cooper argues the stop and seizure violated his Fourth Amendment rights. [Doc. 16.] With his motion, the Defendant argues that the officers did not have probable cause or reasonable suspicion to stop the vehicle, and that, even if the stop was constitutionally justified, the officers exceeded the authorized scope of the stop in their questioning of the Defendant. [Doc. 16 at 4-10.] The United States opposes the motion, arguing that the officers did have reasonable suspicion to approach the vehicle and that the questioning of the Defendant was within the scope of the stop because of concerns for officer safety. [Doc. 24 at 5-10.]

II. Legal Standard

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. These protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

---

[2/]While not directly relevant to the facts at issue in this suppression motion, the Court notes that after handcuffing the Defendant and placing him in their patrol car, the officers finished investigating whether the vehicle was stolen. [Doc. 28 at 21.] After speaking with the driver and checking her registration, the officers determined that the car did in fact belong to her. [*Id.*]

Case No. 1:09-CR-353
Gwin, J.

Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce*, 422, U.S. 873, 878 (1975), tilts in favor of a standard of less than probable cause in such cases, an officer satisfies the Fourth Amendment's requirements if he supports his action by showing objective grounds for reasonable suspicion to believe that criminal activity "may be afoot," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30).

However, an officer must observe some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity to justify an investigatory stop. *Cortez*, 449 U.S. at 417. Although an officer's reliance on a mere "hunch" insufficiently justifies a stop, *Terry*, 392 U.S. at 27, "the likelihood of criminal activity need not rise to the level of probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard," *Arvizu*, 534 U.S. at 274 (citing *Sokolow*, 490 U.S. at 7).

When an officer conducts a traffic stop of a vehicle, both the driver and any passengers of the car are seized within the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249 (2007). Thus a passenger in a stopped vehicle has standing to challenge the constitutionality of the stop, any detention thereafter, or his subsequent removal from the vehicle as unreasonable under the Fourth Amendment. *Id.*; *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008).

A court makes a "reasonable suspicion" determination by looking at the "totality of the circumstances" of the case to decide whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Cortez*, 449 U.S. at 417-18; *Arvizu*, 534 U.S. at 273. In doing so, a court allows officers to draw from their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well

Case No. 1:09-CR-353
Gwin, J.

elude an untrained person." *Cortez*, 449 U.S. at 418. Relevant circumstances include the officer's direct observations, dispatch information, direction from other officers, and the nature of the area and time of day during which the suspicious activity occurred. *Campbell*, 549 F.3d at 371. However, "reasonable suspicion" is a "somewhat abstract" concept, *Ornelas v. United States*, 517 U.S. 690, 696 (1975), and the Supreme Court has "deliberately avoided reducing it to a neat set of legal rules." *Arvizu*, 534 U.S. at 274.

Although a law enforcement officer can conduct a *Terry* stop based upon "reasonable suspicion," the Fourth Amendment requires that an officer possess probable cause to conduct a traditional arrest. *Dunaway v. N.Y.*, 442 U.S. 200, 212-14 (1979). "Probable cause" consists of knowledge, facts, and circumstances that "are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DiFillippo*, 443 U.S. 31, 37 (1979).

### III.  Analysis

The Sixth Circuit has articulated a two-part framework to examine the constitutionality of a *Terry* stop. First, Courts must determine whether there is a proper basis for the stop. *United States v. Melvin Davis*, 514 F.3d 596, 608 (6th Cir. 2008). Next, the Court must examine whether the degree of intrusion was reasonably related in scope to the situation at hand. *Id.*

*A. Did the officers have reasonable suspicion to justify a* Terry *stop?*

As a preliminary matter, the Court must determine whether the officers' actions constituted a warrantless *Terry* seizure. A seizure occurs if, in light of all the circumstances, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004). Officers Sauterer and Taylor

Case No. 1:09-CR-353
Gwin, J.

seized the vehicle when they pulled their police car behind the Toyota, activated the vehicle's overhead lights, and then stepped out of the car and approached the Toyota from both sides. Under these circumstances, the occupants of the vehicle would reasonably believe that they were not free to leave, and were seized for the purposes of Fourth Amendment analysis.[3/]

The Court next considers whether this initial stop and seizure of the vehicle was permissible under the Fourth Amendment. Under *Terry*, a police officer may temporarily detain a person or property for investigative purposes only if the officer has "a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Kevin Davis*, 430 F.3d 345, 354 (6th Cir. 2005). In determining whether there was a proper basis for the stop, a court must examine whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion. *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).

Officers Sauterer and Taylor's stop and seizure of the vehicle could be justified only if they had a reasonable suspicion that the occupants of the vehicle were engaged in, or were about to engage in, criminal activity. When the officers first observed the car in mid-afternoon, it was legally parked on Ridpath Avenue. [Doc. 28 at 24, 32.] As the vehicle was not moving, the officers did not observe the vehicle commit any traffic violation. [*Id.* at 24.] The officers had received no report that the vehicle or its license plates were stolen and had received no other reports that any other criminal activity was afoot on Ridpath Avenue.

The car was still legally parked in the same spot when the officers returned to Ridpath

---

[3/]In fact, Officer Sauterer testified during the suppression hearing that in this situation the individuals probably would not have felt free to leave until the officers had finished asking them questions. [Doc. 28 at 25-26.]

-6-

Case No. 1:09-CR-353
Gwin, J.

Avenue and initiated the *Terry* stop. [*Id.* at 16.] The only criminal activity in which the officers could suspect the Toyota's occupants of being involved related to the car being stolen.[4/] Therefore, the officers' actions were justified only if they possessed articulable facts supporting a reasonable suspicion that the car had been stolen. The only information the officers possessed supporting their belief that the car could have been stolen was that the color of the Toyota did not match the color of the registered vehicle corresponding to the plates and that the car was parked in a high crime area. All of the other characteristics of the vehicle matched that of the vehicle registered to the plates. [Doc. 28 at 24, 27, 42-43.]

The officers' search of computer records did not show the license plates (or the vehicle to which they were attached) had been reported stolen, nor had the officers received a tip of a stolen vehicle with a description matching that of the silver Toyota. [*Id.* at 43.] Moreover, when the officers first passed the Toyota, they did not observe anything about the passengers inside. [*Id.* at 12.] They did not notice any suspicious behavior of the Defendant or the other occupants of the vehicle until after they approached the Toyota from both sides--that is, after the Toyota and its occupants had already effectively been seized. [*Id.* at 44.]

While the fact that a stop occurred in a high crime area may be a "contextual consideration" in *Terry* analysis, presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable suspicion of criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Brown v. Texas*, 443 U.S. 47, 52 (1979). Considering the totality of the circumstances, the Court finds that the officers did not possess sufficient "articulable facts" to support a reasonable suspicion

---

[4/] While the Court recognizes that the standard for reasonable suspicion is an objective, and not subjective, one, it is worth nothing that the Officers admitted that when they approached the vehicle, their only basis was their belief that the car might be stolen. [Doc. 28 at 42.]

Case No. 1:09-CR-353
Gwin, J.

that the car had been stolen. *Compare United States v. See*, 574, F.3d 313-14 (6th Cir. 2009)(*Terry* stop not supported by reasonable suspicion where three male passengers seated in unlit parked car, missing front license plate, in high-crime area at 4:30 a.m.) *with United States v. Campbell*, 549 F.3d 364, 368, 371 (6th Cir. 2008) (finding reasonable suspicion based upon officers' observing unlit vehicle parked on privately owned railroad access road under viaduct in area known for high crime, vehicle's license tags that were "not on file," driver attempting to drive away from patrol car, occupants' conflicting reasons for their presence, and passenger's "furtive posture"). Because the officers did not have reasonable suspicion, the Court finds that the *Terry* stop was unlawful, and the resulting evidence, including the firearm and statements made by the Defendant, must be suppressed.

*B. Did the officers exceed the permissible scope of the* Terry *stop?*

The Defendant also argues that Officers Sauterer and Taylor violated his constitutional rights because their search and seizure exceeded the permissible time and scope of the investigatory stop. [Doc. 16 at 8-19.] For the sake of completeness, the Court will also consider this argument.

"A *Terry* stop must not only be justified at its inception, but also 'must be reasonably related in scope to the circumstances which justified the interference in the first place.'" *Campbell*, 549 F.3d 364, 372 (quoting *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008)). Whether the degree of intrusion was reasonably related in scope to the situation at hand is judged by examining the "reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Garza*, 10 F.3d at 1245. When conducting a *Terry* stop, officers may take actions "reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). "A concern for officer safety permits a variety of police responses in differing circumstances, including ordering . . . a passenger

-8-

Case No. 1:09-CR-353
Gwin, J.

out of a car during a traffic stop, and . . . conducting pat-down searches upon reasonable suspicion that they may be armed and dangerous." *Campbell*, 549 F.3d at 372 (internal citations omitted).

The Defendant argues that Officer Taylor exceeded the permissible scope of the *Terry* stop because his questioning of the Defendant was not related to the purposes of the stop, investigating whether the car was stolen. [Doc. 16 at 9-10.] However, as the officers testified, Defendant Cooper appeared agitated and was looking around nervously as Officer Taylor approached. [*Id.* at 35-36.] When Officer Taylor approached the car, the Defendant was hiding his hands below the seat, and officer Taylor asked him to show his hands and asked if he "had anything."[5/] [Doc. 16 at 2; Doc. 24 at 2.] Had the officers lawfully seized Cooper, Officer Taylor was justified in asking the Defendant these questions because, based on the Defendant's suspicious behavior, he could investigate whether the Defendant had a weapon. *See United States v. Mario Davis*, 2009 WL 1505254, at \*3-4 (6th Cir. May 27, 2009) (officers may order passengers in a vehicle to keep hands visible throughout stop, and, if they do not obey, remove them from vehicle and conduct a pat down). Even if the Defendant had shown Officer Taylor his empty hands before being asked if he "had anything," Officer Taylor's question was justified because the Defendant could have placed a weapon on or under the seat before showing the officer his hands. [*See* Doc. 28 at 36-37 (describing the manner in which the Defendant was seated and hiding his hands).]

After the Defendant replied that he had "some weed," Officer Taylor had at least reasonable suspicion and likely probable cause to remove Defendant Cooper from the car and seize the

---

[5/]As noted earlier, Officer Taylor's testimony did not reflect that he asked the Defendant to "show him his hands" but stated that his first statement to the Defendant was to ask him if he "had anything." [Doc. 28 at 37, 46.] However, both the government's and the Defendant's briefs on the motion to suppress, presumably based upon the officers' reports, indicate that Officer Taylor did ask the Defendant to show him his hands. [Doc. 16 at 2; Doc. 24 at 2.]

Case No. 1:09-CR-353
Gwin, J.

marijuana. *See Campbell*, 549 F.3d at 373 (officer justified in removing defendant from car to conduct pat down for weapons and subsequently seizing drugs from Defendant's pocket when pat down "indicated the presence of contraband"). The discovery of the marijuana gave Officer Taylor probable cause to arrest the Defendant, which includes the power to handcuff and pat down for weapons. *Id.; see also United States v. Mario Davis,* 2009 WL 1505254, at *3-4 (gun properly discovered and seized after passenger removed from vehicle and patted down as either (1) protective *Terry* stop justified by concerns for officer safety or (2) search incident to arrest based upon probable cause to arrest for violating open-container law).

Thus the Court finds that the initial seizure was unlawful. However, if the initial stop been justified, which the Court finds it was not, the officers did not exceed the permissible scope of the *Terry* stop with their search and seizure of the Defendant. Because the Court finds that the officers lacked reasonable suspicion necessary to initially detain the vehicle, it finds that the statements made and evidence seized during the subsequent search and seizure of the Defendant should be suppressed. *See Wong Sun v. United States,* 371 U.S. 471 (1963).

IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to suppress. [Doc. 16].

IT IS SO ORDERED.

Dated: October 13, 2009                 s/         *James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE